UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**HEIDI HAMPTON-DAVIS,**

    Plaintiff,

    v.                                              Case No. 22-CV-1437-SCD

**FROEDTERT HEALTH, INC.,**

    Defendant.

## DECISION AND ORDER
## DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Heidi Hampton-Davis filed a discrimination suit against her former employer, Froedtert Health, Inc. She alleges that Froedtert terminated her because of her religious beliefs and failed to provide her with a religious accommodation, in violation of Title VII of the Civil Rights Act of 1964. Froedtert filed a motion for summary judgment, arguing that Hampton-Davis' claims fail as a matter of law. As explained herein, Froedtert has not established that Hampton-Davis cannot prove a prima facie case of religious discrimination, nor that it would necessarily incur an undue burden by accommodating her. Therefore, I will deny Froedtert's motion and allow Hampton-Davis' suit to proceed.

## BACKGROUND

Hampton-Davis worked as a Gift Shop Coordinator for a hospital in Froedtert's network. ECF No. 30 ¶ 5. On November 4, 2021, the Centers for Medicare/Medicaid Services (CMS) issued an interim final rule with comment period requiring Medicare and Medicaid-certified providers and suppliers, such as Froedtert, to establish COVID-19 vaccination requirements for all staff. *Id.* at ¶ 22. Since the ruling permitted exemptions for disabilities and

religious reasons, employers also had to create a program to mitigate the spread of COVID-19 by vaccine-exempt employees. *Id.* at ¶¶ 23–24. In anticipation of that ruling, and in response to the growing threat of the COVID-19 pandemic generally, Froedtert implemented a vaccination and testing program on August 3, 2021. *Id.* at ¶ 28. The program required all employees, volunteers, students, temporary employees, or any other workers affiliated with Froedtert to be fully vaccinated against COVID-19 by November 2, 2021. *Id.* at ¶ 29. Froedtert directed these individuals to apply for medical or religious exemptions by August 24, 2021. *Id.* at ¶ 30.

Hampton-Davis applied for a medical exemption from the COVID-19 vaccine on August 4, 2021. *Id.* at ¶ 64. Previously, she successfully applied for a medical exemption from Froedtert for the flu vaccine in 2020, after experiencing an adverse reaction to the vaccine due to a flare up of Meniere's disease, a disorder affecting balance and hearing. *Id.* at ¶ 61. The plaintiff's COVID-19 exemption request also cited Meniere's disease. *Id.* at ¶ 65. On August 11, 2021, Froedtert approved the COVID-19 exemption—writing in an email to Hampton-Davis that her medical exemption "is considered permanent, and will be effective for the duration of your employment and/or relationship with Froedtert Health & Medical College of Wisconsin." *Id.* at ¶ 69; ECF No. 29-3.

On December 15, 2021, Froedtert advised Hampton-Davis via email that CDC guidance had changed and stated specifically that Meniere's disease was not on the list of considerations for avoiding the COVID-19 vaccine. ECF No. 30 at ¶ 71. Froedtert requested that Hampton-Davis provide more information from her physician regarding the rationale for an exemption based on her condition. *Id.* Hampton-Davis responded:

> Nobody can honestly say what the vaccine may do to me. I was quite harmed by flu shot, and my disease advanced. Personally—I don't think reasons

2

> can be fully understood or explained. I want someone to guarantee that I won't have an adverse reaction—and I know that won't happen . . . I would have submitted a religious exemption because not only are vaccines dangerous to "my" health but they go against my biblical world view. Now my exemption is not valid and I'm not allowed to submit a religious exemption?
>
> I have followed all the rules and protocols, have been an excellent employee. What is it that I should think? Or do? Do you have any suggestion Mary? I will not ever take the C-19 vaccine. Nor will I voluntarily resign.

*Id.* at ¶ 72. On January 3, 2022, Froedtert advised Hampton-Davis that it denied her medical exemption request for the COVID-19 vaccine. *Id.* at ¶ 73.

In the interim, Hampton-Davis submitted a religious exemption request on December 16, 2021. *Id.* at ¶ 74. In her request, she claimed that she is a "born again Christian" with a personal relationship with God through "His Word—the Bible" and wrote the following:

> I am invoking my legal federal religious exemption based on Title VII of the US Civil rights act, which prohibits discrimination in the workplace. My sincerely held religious beliefs prevent me from taking this vaccine. It is my God given responsibility to protect the physical integrity of my body against unclean injections. Possible fetal cell line substances in the shot clearly go against my biblical worldview. Also Wisconsin law and the US constitution recognize my right to object to consuming something—namely this vaccine because it clearly violates my faith.

ECF No. 29-1 at 2. In response to the question, "How does your opposition to receiving the COVID-19 vaccine fit within your religion or belief system as a whole?," she wrote:

> Pursuant to my Christian faith, I believe my body is a temple of the Holy Spirit. 1 Corinthians 6:19. Do you know that your bodies are temples of the Holy Spirit, who is in you, whom you have received from God? You are not your own.
>
> Even though this form states religious exemption was due by August 24, 2021, I believe it is still my right to seek exception after documented previous (permanent) approval was withdrawn 12/3/21. I am signing this document without a waiver of my legal right to see religious exemption and accommodation from any requirement that conflicts with my sincerely held

3

> religious beliefs, and without waiver of the right to see legal redress from any wrongful denial of such exemption or accommodation.

*Id.* On January 3, 2022, Froedtert denied Hampton-Davis' request for religious exemption. ECF No. 30 at ¶ 78. She attempted to appeal the denial on January 16. *Id.* at ¶ 79. However, Froedtert replied on January 17 that it had "made the organizational decision to not reopen the opportunity to submit new COVID Vaccine religious exemption requests. Froedtert Health staff members had the opportunity to seek COVID Vaccine religious exemption during the timeframe and chose not to proceed at that time." *Id.* at ¶ 80.

Hampton-Davis took a leave of absence and received workers' compensation for an unrelated incident in December 2021. *Id.* at ¶¶ 81–83. Because she did not receive the COVID-19 vaccine by her scheduled return date in May 2022, Froedtert terminated her for failure to comply with its vaccine policy. *Id.* at ¶ 84.

In December 2022, Hampton-Davis filed a complaint in federal district court against Froedtert, alleging religious discrimination in violation of Title VII. *See* ECF Nos. 1, 10. The clerk randomly assigned the matter to Judge Pepper, who reassigned it to me after all parties consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF Nos. 3, 13, 14. On March 30, 2024, Froedtert filed a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. *See* ECF No. 22. Hampton-Davis filed a brief in opposition, ECF No. 31, and Froedtert filed a reply brief, ECF No. 32.

**SUMMARY JUDGMENT STANDARD**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts" are those that, under the applicable substantive law, "might affect the outcome of the suit." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986). A dispute over a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A moving party "is 'entitled to a judgment as a matter of law'" when "the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Still,

> a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* (internal quotation marks omitted).

To determine whether a genuine issue of material fact exists, I must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *See Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003) (citing *Anderson*, 477 U.S. at 255). "However, [my] favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Fitzgerald v. Santoro*, 707 F.3d 725, 730 (7th Cir. 2013) (quoting *Harper v. C.R. Eng., Inc.*, 687 F.3d 297, 306 (7th Cir. 2012)). That is, "to survive summary judgment, the non-moving party must establish some genuine issue for trial 'such that a reasonable jury could return a verdict' in [his] favor." *Id.* (quoting *Makowski v. SmithAmundsen LLC*, 662 F.3d 818, 822 (7th Cir. 2011)).

## DISCUSSION

To establish a prima facie case under Title VII, an employee must demonstrate: "(1) an observance or practice that is religious in nature, and (2) that is based on a sincerely held religious belief, (3) conflicted with an employment requirement, and (4) the religious

5

observance or practice was the basis or a motivating factor for the employee's discharge or other discriminatory treatment." *Kluge v. Brownsburg Cmty. Sch. Corp.*, 64 F.4th 861, 883 (7th Cir. 2023), vacated on other grounds, No. 21-2475, 2023 WL 4842324 (7th Cir. July 28, 2023). "If the employee shows these elements, the burden then shifts to the employer to show that it could not accommodate the employee's religious belief or practice without causing the employer undue hardship." *Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 449 (7th Cir. 2013).

Froedtert argues that Hampton-Davis fails to satisfy the first, second, and fourth elements of a prima facie case. ECF No. 27 at 15–24. Froedtert also maintains that even if Hampton-Davis could establish a prima facie case, accommodating her would have required it to bear an undue burden. *Id.* at 25–28. For her part, Hampton-Davis maintains that she sincerely holds a religious belief in the sanctity of life from conception that conflicts with Froedtert's vaccine requirement (given the undisputed involvement of fetal cell lines in the vaccine's development). ECF No. 31 at 5–7. The plaintiff further contends that her accommodation would not have unduly burdened Froedtert, but it fired her on the basis of that belief anyways. *Id.* at 7–10.

I. **Religious Observance or Practice**

"In the Seventh Circuit, the test for whether a sincerely held belief qualifies as religious for Title VII purposes is whether it 'occupies a place in the life of its possessor parallel to that filled by the orthodox belief in God,' . . . such as beliefs that involve 'matters of the afterlife, spirituality, or the soul, among other possibilities.'" *Guthrie-Wilson v. Cook County*, No. 23C362, 2023 WL 8372043, at *2 (N.D. Ill. Dec. 4, 2023) (quoting *Adeyeye*, 721 F.3d at 448). The employer must give "great weight" to an employee's claim that her "belief is an

6

essential part of a religious faith." *Adeyeye*, 721 F.3d at 448 (quoting *United States v. Seeger*, 380 U.S. 163, 184 (1965)). Unlike the *sincerity* of the individual's belief, "[t]he *validity* of what [she] believes cannot be questioned." *See id.* (emphasis added). Moreover, "a 'deeply and sincerely' held belief that is 'purely ethical or moral in source and content but that nevertheless impose[s] upon [one] a duty of conscience' to act in a particular way, may be considered religious if it 'function[s] as a religion' in that person's life and is 'held with the strength of traditional religious convictions.'" *Jackson v. Tyson Foods, Inc.*, No. 5:23-CV-5102, 2023 WL 9097854, at *4 (W.D. Ark. Nov. 27, 2023) (quoting *Welsh v. United States*, 398 U.S. 333, 340 (1970)).

Here, Hampton-Davis claimed her religious beliefs precluded her from taking the vaccine because of the vaccine's uncleanliness and her belief that her body is a "temple of the Holy Spirit." ECF No. 29-1 at 2. Courts have generally found similar invocations of "vaguely religious themes like describing her body as a 'temple of God' that she must protect against 'unclean' substances" do not qualify as a religious belief. *See Nelson-Godfrey v. Cook Cnty.*, No. 23 C 16893, 2024 WL 2722668, at *2–3 (N.D. Ill. May 28, 2024) (collecting cases). After all, such "broad appeals to personal health, if counted as religious for Title VII purposes, would provide a nearly 'limitless excuse for avoiding' all sorts of work requirements." *Id.* (quoting *Ellison v. Inova Health Care Servs.*, No. 1:23-cv-00132 (MSN/LRV), __ F. Supp. 3d __, 2023 WL 6038016, at *5 (E.D. Va. Sept. 14, 2023)); *but see Prodan v. Legacy Health*, No. 3:23-CV-01195-HZ, __ F. Supp. 3d __, 2024 WL 665079, at *4 (D. Or. Feb. 12, 2024) (finding "the body as a temple of God" constituted a religious belief in conflict with a COVID-19 vaccine requirement).

7

However, Hampton-Davis has claimed the vaccine is "unclean" because it was "produced, developed, or researched" with the use of aborted fetal stem cell lines, which violates her belief in the sanctity of life from conception. *See* Pl.'s Statement of Add'l Facts, ECF No. 30 at ¶ 1 (citing Pl.'s Affidavit, ECF No. 29 at ¶ 1); ECF No. 31 at 5. Opposition to abortion is generally recognized as a religious belief. *See, e.g.*, *Rodriguez v. City of Chicago*, 156 F.3d 771, 775 (7th Cir. 1998) (finding an employer reasonably accommodated an officer's religious-based opposition to guarding an abortion clinic). Courts across the country have also recognized a religious-based opposition to abortion in the context of the COVID-19 vaccine's development. *See Keene v. City & Cnty. of San Francisco*, No. 22-16567, 2023 WL 3451687, at *2 (9th Cir. May 15, 2023) (overturning district court ruling that found no conflict between COVID-19 vaccine and religious opposition to abortion); *Collins v. Tyson Foods, Inc.*, 665 F. Supp. 3d 845, 856 (W.D. Ky. 2023) (denying motion to dismiss where plaintiff claimed Christian beliefs conflicted with vaccine's "production or testing of fetal cell lines"); *Algarin v. NYC Health + Hosps. Corp.*, 678 F. Supp. 3d 497, 508 (S.D.N.Y. 2023) (recognizing a religious belief where plaintiff alleged he was a practicing Christian whose beliefs prevented him from receiving "a COVID-19 vaccine that was tested, developed, or produced with fetal cell lines"); *Taylor v. Milford Reg'l Med. Ctr., Inc.*, No. 4:23-CV-40009-MRG, 2024 WL 2111459, at *5 (D. Mass. May 10, 2024) (finding opposition to abortion was founded in plaintiffs' religion "rather than their idiosyncratic personal beliefs"); *Prodan*, 2024 WL 665079, at *4 (recognizing religious-based opposition to abortion conflicted with COVID-19 vaccine mandate); *Shields v. Main Line Hosps., Inc.*, No. 2:22-CV-03307-MRP, 2023 WL 7129953, at *5 (E.D. Pa. Oct. 27, 2023) (finding that opposition to the use of fetal cell lines was religious in nature); *Ellison*, 2023 WL 6038016, at *6 (concluding Christian employee who claimed the use of "bodily

8

remains" rendered the vaccines "unclean" had adequately linked his objection to the use of fetal cell lines in development and testing of some COVID-19 vaccines to his religious belief in the "sanctity of human life"); *Kather v. Asante Health Sys.*, No. 1:22-CV-01842-MC, 2023 WL 4865533, at *4 (D. Or. July 28, 2023) (allegation of opposition to vaccine as "originat[ing] from fetal cell lines" sufficient to allege religious conflict); *Aliano v. Twp. of Maplewood*, No. 22-CV-5598 (ES) (AME), 2023 WL 4398493, at *7, 9 (D.N.J. July 7, 2023) (recognizing religious belief where opposition stemmed from the use of fetal cell lines in vaccine development).

Nevertheless, Froedtert claims that the plaintiff's belief in protecting the physical integrity of her body from the vaccine's connection to fetal cells is not a valid religious belief. ECF No. 27 at 17. The defendant relies primarily on *Kiel v. Mayo Clinic Health Sys.*, 685 F. Supp. 3d 770, 785 (D. Minn. Aug. 4, 2023), in which the district court ruled that the plaintiffs' anti-vaccine beliefs were personal medical preferences. However, the Eighth Circuit reversed *Kiel* after the parties completed briefing. *See Ringhofer v. Mayo Clinic*, 102 F.4th 894, 902 (8th Cir. 2024). According to the Eighth Circuit, "[t]he district court erred by emphasizing that many Christians elect to receive the vaccine." *Id.* at 901–02; *see also Holt v. Hobbs*, 574 U.S. 352, 362 (2015) (observing that "the guarantee of the Free Exercise Clause is not limited to beliefs which are shared by all of the members of a religious sect") (cleaned up) (citation omitted)). Furthermore, "overlap between a religious and political view does not place it outside the scope of Title VII's religious protections, as long as the view is part of a comprehensive religious belief system." *Id.* at 901 (quoting Compliance Manual § 12-I(A)(1) (Jan. 15, 2021)). Ultimately, the Eighth Circuit found that three plaintiffs plausibly pled anti-abortion religious

9

beliefs that conflicted with the defendant's vaccine requirement. *See Ringhofer*, 102 F.4th at 902.

Froedtert also points to *Jackson v. Tyson Foods, Inc.*, No. 5:23-CV-5102, 2023 WL 9097854, at *8 (W.D. Ark. Nov. 27, 2023). In *Jackson*, the only substantive allegations about the plaintiffs' opposition to the vaccine stated: "Mr. and Mrs. Sims are 'strongly opposed to the use of aborted fetus cells used in the development and/or production of COVID-19 vaccines'; and that they 'respect[ ] all human life and refuse[ ] to benefit from harm to fetal life.'" 2023 WL 9097854, at *8. The district court found this description failed to ground the plaintiffs' opposition to the vaccine in a religious belief. *Id.* Similarly, the district court in *Winans v. Cox Automotive, Inc.* found the plaintiff failed to link his "sincere concerns" with the use of fetal cell lines to "any formal and external signs" of religion. 669 F. Supp. 3d 394, 401 (E.D. Pa. 2023) (observing that the complaint did not identify *why* the plaintiff objected to the use of fetal cell lines).

In this case, Hampton-Davis stated on her religious exemption form that possible fetal cell line substances in the vaccine "clearly go against [her] biblical worldview." ECF No. 29-1 at 2. She did not expound upon any particular religious tenets at that time but directly identified her religious belief in the complaint: "As a Born-Again Christian, Plaintiff holds strong religious beliefs on sanctity of life at all stages, from conception to death. Plaintiff is pro-life." ECF No. 1 at ¶ 7; *see also* ECF No. 29 at ¶ 1. This explanation sufficiently states a religious belief underpinning the plaintiff's opposition to the vaccine. That she admittedly holds personal medical reasons for opposing the vaccine does not preclude her from also harboring this religious belief.

10

Case 2:22-cv-01437-SCD   Filed 07/15/24   Page 10 of 17   Document 34

## II. Sincerely Held Belief

Froedtert argues that Hampton-Davis' religious objection to the COVID-19 vaccine is not sincerely held. ECF No. 27 at 17–20. Froedtert cites EEOC guidance, which advises that "objections to a COVID vaccination requirement that are purely based on . . . nonreligious concerns (including about the possible effects of the vaccine), do not qualify as religious beliefs." *What You Should Know About COVID and the ADA, the Rehabilitation Act, and Other EEO Laws*, U.S. Equal Opportunity Employment Commission (last updated July 12, 2022).[1] The EEOC material continues, "However, overlap between a religious and political view does not place it outside the scope of Title VII's religious protections, as long as the view is part of a comprehensive religious belief system and is not simply an isolated teaching." *Id.* As determined above, Hampton-Davis has sufficiently identified a religious belief in addition to her personal opposition to the vaccine.

Froedtert further contends that Hampton-Davis does not sincerely hold the religious belief because she submitted a religious exemption request only after Froedtert withdrew her medical exemption. ECF No. 27 at 19. However, Hampton-Davis has logically explained that she did not feel it was necessary to submit a religious exemption request given her successful, and supposedly permanent, medical exemption. ECF No. 31 at 2. Therefore, Froedtert's reasoning is inconsistent with my obligation to read the facts in the light most favorable to the plaintiff at this stage of the proceedings.

Froedtert also highlights that Hampton-Davis stated during her deposition that she did not know, nor had she researched, whether any other substances that she bought, used,

---

[1] Available at https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws.

ingested, or otherwise supported were developed using fetal cell lines. ECF No. 27 at 19 (citing ECF No. 24-1 at 109:6–24). However, "Title VII and courts . . . do not require perfect consistency in observance, practice, and interpretation when determining . . . whether a person's belief is sincere." *Adeyeye*, 721 F.3d at 453; *see also Grayson v. Schuler*, 666 F.3d 450, 454-55 (7th Cir. 2012) ("[A] sincere religious believer doesn't forfeit his religious rights merely because he is not scrupulous in his observance; for where would religion be without its backsliders, penitents, and prodigal sons?").

Whether Hampton-Davis sincerely holds her religious belief is ultimately a question of fact more suitable for a factfinder at trial. *See Villareal v. Rocky Knoll Health Care Ctr.*, No. 21-CV-729, 2022 WL 17092090, at *5 (E.D. Wis. Nov. 21, 2022) (noting that the question of a sincerely-held religious belief requires a credibility assessment); s*ee also EEOC v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico*, 279 F.3d 49, 56 (1st Cir. 2002) ("Credibility issues such as the sincerity of an employee's religious belief are quintessential fact questions. As such, they ordinarily should be reserved for the factfinder at trial, not for the court at summary judgment." (internal quotations and citation omitted)). Accordingly, Froedtert has not met its burden with respect to the second element.

### III. Motivating Factor

The fourth element of a Title VII prima facie claim requires a complaining party to demonstrate that "the religious observance or practice was the basis or a motivating factor for the employee's discharge or other discriminatory treatment." *Kluge*, 64 F.4th at 883. Froedtert argues that it could not have terminated Hampton-Davis due to her religious belief for two alternative reasons: (1) the information that Hampton-Davis supplied to Froedtert prior to her termination did not constitute a sincerely held religious belief, and (2) Froedtert fired

12

Hampton-Davis because of her non-compliance with the religious exemption deadline. ECF No. 27 at 20–21.

Froedtert argues that even if the plaintiff's objection to the vaccine requirement was motivated by a sincerely held religious belief, the information she supplied prior to her termination was insufficient to put Froedtert on notice of that fact, and therefore, Froedtert could not have terminated her on the basis of that religious belief. ECF No. 27 at 23–24. Indeed, Hampton-Davis's reference to a "biblical worldview" on her exemption request form was undeveloped and vague. ECF No. 29-1 at 2. Froedtert also contends that Hampton-Davis failed to expand upon her beliefs in subsequent communications (although Froedtert does not suggest that it ever asked her to do so). ECF No. 27 at 23. Regardless, connecting the plaintiff's reference to Christianity/the Bible with a concern about fetal cells does not require so great an inference that Froedtert can reasonably declare it had no idea that it could be ignoring an employee's religious belief by terminating her for vaccine noncompliance. *Compare Winans*, 669 F. Supp. 3d at 401 (plaintiff failed to allege that his "sincere concerns" with the use of fetal cell lines related to religion)*, with Aliano*, 2023 WL 4398493, at *7 (finding plaintiff's invocation of Christianity and Bible passage that "the inmost being is sacrosanct" adequately connected his anti-abortion beliefs to his religion and objection to vaccine mandate).

With respect to the missed deadline, Froedtert argues that it neutrally applied the cutoff date for religious exemption requests to all employees. ECF No. 27 at 22. Froedtert points to *Anderson v. United Airlines, Inc.*, in which the district court determined that the plaintiff's failure to meet his employer's "neutral deadline" suggested that his religious practice was not a motivating factor in the denial of his vaccine exemption request and subsequent termination. No. 23 C 989, 2023 WL 5721594, at *5 (N.D. Ill. Sept. 5, 2023).

13

Hampton-Davis argues that *Anderson* is distinguishable because the plaintiff in that case was at fault for failing to comply with the deadline. Here, by contrast, Hampton-Davis timely obtained a supposedly permanent medical exemption and promptly requested a religious exemption once Froedtert withdrew the medical exemption. ECF No. 31 at 9. Moreover, Hampton-Davis avers that Froedtert said employees could apply for either a medical or religious exemption (not both) and that she would have timely applied for a religious exemption if the medical exemption was not approved by the deadline. ECF No. 29 at ¶¶ 9–12. Taking these facts in the light most favorable to the plaintiff, Froedtert has not established that its deadline enforcement precluded it from discriminating against Hampton-Davis based on her religion.

Even setting aside the issue of fault for missing the deadline, I respectfully disagree with Froedtert's characterization of the *Anderson* court's analysis. An employer's denial of a religious exemption request on the basis of a company-wide policy does not mean that the employee's religious belief could not have been a motivating factor for the employer's adverse treatment. After all, "an employer who acts with the motive of avoiding accommodation may violate Title VII even if he has no more than an unsubstantiated suspicion that accommodation would be needed." *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 773 (2015). What is a deadline for accommodation requests if not an effort to avoid accommodations?

In reality, the propriety of a deadline is dependent on whether the accommodation would impose an undue burden. *See id.* at 770 (observing that an employer cannot "avoid accommodating a religious practice that it could accommodate without undue hardship"). The *Anderson* court appears to have indirectly taken this question into account when it

14

observed that the defendant's deadline was not arbitrary or discriminatory in light of the COVID-19 pandemic. *See Anderson*, 2023 WL 5721594, at *5. Similarly, the district court in *Walter v. Eugene School District 4J* indirectly applied an undue burden test when it found the employer's accommodation deadline was reasonable in light of the time it needed to process vaccine exemption requests for compliance with a state law deadline. No. 6:23-CV-00688-AA, 2024 WL 1367188, at *5 (D. Or. Mar. 31, 2024). Froedtert itself appears to recognize this connection as well, explaining: "By the time Plaintiff submitted her belated request, Froedtert had determined that it would no longer accept any new requests for COVID vaccine religious exemptions . . . *because of the undue hardship* involved in continuing to add unvaccinated individuals to its worker population." ECF No. 27 at 2 (emphasis added) (citing ECF No. 23 ¶¶ 55–56). Tying such deadlines to the undue burden analysis ensures that employers who can reasonably accommodate employees do not avoid doing so under the veil of a "neutral" deadline.

Because its inadequate information and missed deadline theories each fail, Froedtert has not conclusively demonstrated that it terminated Hampton-Davis only for nondiscriminatory reasons.

IV. **Undue Burden**

Regardless of the prima facie case factors, Froedtert argues that accommodating the plaintiff's religious belief would have required it to shoulder an undue burden. ECF No. 27 at 25–28. The U.S. Supreme Court recently clarified the undue hardship standard in *Groff v. DeJoy*, 600 U.S. 447 (2023). The Court advised that "courts must apply the test in a manner that takes into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size, and operating

15

cost of an employer." *Id.* at 470–71. Accordingly, an undue hardship is established when the burden of accommodation "is substantial in the overall context of an employer's business." *Id.* at 468. "[U]ndue hardship is generally treated as an issue of fact." *Villareal*, 2022 WL 17092090, at *7; *see also Menges v. Blagojevich*, 451 F. Supp. 2d 992, 1004 (C.D. Ill. 2006) ("Whether accommodating the Plaintiffs' beliefs imposes an undue burden is an issue of fact."). The issue can be resolved as a matter of law in certain circumstances, such as when the proposed accommodation would "either cause or increase safety risks or the risk of legal liability for the employer." *EEOC v. Oak-Rite Mfg. Corp.*, No. 99-cv-1962-DFH, 2001 WL 1168156, at *10 (S.D. Ind. Aug. 27, 2001).

In this case, Froedtert has not identified any exposure to legal liability posed by accommodating Hampton-Davis in the same manner as its other employees who applied for religious exemptions. Instead, Froedtert contends that accommodating the plaintiff by allowing her to work unvaccinated would have increased safety risks for other members of Froedtert's staff, the patients it serves, and any other guests of Froedtert. ECF No. 27 at 27. Froedtert does not explain what distinguishes Hampton-Davis from the hundreds of other employees allowed to work unvaccinated under religious exemptions.

Froedtert's argument hinges on its contention that "it would have to review those [religious exemption requests] not only of current employees like Plaintiff who decided to submit exemption requests, but the 240–250 new employees Froedtert added each month, as well as its 850 temporary employees, 150–200 vendors and other onsite contractors, and hundreds of volunteers and students." *Id.* at 26. "[I]t is appropriate to consider aggregate effects when multiple employees are granted the same accommodation." *Together Emps. v. Mass Gen. Brigham Inc.*, 573 F. Supp. 3d 412, 437 (D. Mass. 2021), aff'd, 32 F.4th 82 (1st Cir.

16

2022) (citing *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 84 n.5 (1977)). But Froedtert does not explain why it would have had to reopen the exemption requests for those other groups if it were to consider the plaintiff's request. Having timely obtained a "permanent" medical exemption, Hampton-Davis found herself in a unique situation when Froedtert withdrew her exemption due to changes in external guidance. The parties have not presented evidence about how many—or whether any—other employees similarly lost their exempted status after the deadline passed. On this record, Froedtert has failed to establish that it would have needed to accommodate multiple, additional employees or that accommodating one more employee would cause an undue burden.

## CONCLUSION

For all the foregoing reasons, the court **DENIES** the defendant's motion for summary judgment, ECF No. 22. The clerk of court shall schedule a status conference to address further proceedings.

**SO ORDERED** this 15th day of July, 2024.

_____
STEPHEN C. DRIES
United States Magistrate Judge